

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC., | § § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. 0:19-01835-MGL |
| | § | |
| CANDIOLI S.R.L., | § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO DISMISS**

### I. INTRODUCTION

Nutramax Laboratories Veterinary Sciences, Inc. (Nutramax) brought this action against Candioli S.R.L. (Candioli), alleging a breach of contract. The Court has diversity jurisdiction over the matter in accordance with 28 U.S.C. § 1332.

Pending before the Court is Candioli's motion to dismiss or, in the alternative, to stay the action. Having carefully considered the motion, the response, the reply, the record, and the applicable law, the Court will deny the motion.

### II. FACTUAL AND PROCEDURAL HISTORY

"On or about February 5, 2018, Candioli and Nutramax entered into two . . . Distributor Agreements . . . under which Nutramax appointed Candioli a wholesale distributor for the . . . distribution of certain of Nutramax's . . . nutritional supplements for animals in Europe." Complaint

¶ 1. Among other terms, the Distributor Agreements required Candioli to "provide a listing of new products being launched or offered by [Candioli] containing . . . chondroitin sulfate." Distributor Agreements ¶ 13.  In Nutramax's complaint, it pleads that, "[p]ursuant to the Distributor Agreements, Candioli had an obligation to inform Nutramax that Candioli intended to launch or offer for sale products containing chondroitin sulfate." Complaint ¶ 34.

On July 27, 2018, "Nutramax entered into a Termination Agreement with Candioli, seeking to end the commercial relationship between the parties under the Distribution Agreements." *Id*. ¶ 2. "Under the Termination Agreement, Candioli was obligated to sell-off its remaining inventory of Nutramax supplements. . . . Moreover, the Termination Agreement prohibited Candioli from using Nutramax's trademarks for 'any purpose or reason,' including specifically 'for product comparison purposes.'" *Id.*

The Termination Agreement further prohibited Candioli "from selling products that compete with Nutramax's COSEQUIN® products prior to September 1, 2018." *Id*. ¶ 53.  Nutramax claims that, "[p]rior to termination of the Distributor Agreements, Candioli knew that it intended to launch or offer for sale products containing chondroitin sulfate." Complaint ¶ 35.  It further states that "Candioli consciously and knowingly disregarded its obligation and failed to disclose its intentions to Nutramax, materially breaching the Distributor Agreements." *Id*. ¶ 36.

As per the forum selection clause in the three agreements between the parties, they agreed that "[a]ny suit brought by either party against the other party for claims arising out of th[e] Agreement[s] shall be brought in the United States Court for the District of South Carolina, U.S.A., or in the event that court lacks subject matter jurisdiction to hear the claim, in any South Carolina State court in Lancaster County." Distribution Agreements ¶ 25; Termination Agreement ¶ 12(b).

On June 27, 2019, Nutramax filed this action against Candioli, asserting claims for breach of the Distributor and Termination Agreements. Then, on July 4, 2019, Nutramax commenced an action in Italy, asserting unfair competition in the Italian market.

Afterward, Candioli filed this motion to dismiss or stay. Nutramax then filed its response in opposition to the motion, and Candioli filed its reply in support. The Court, having been fully briefed on the relevant issues, is prepared to adjudicate the motion.

### III. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, the Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8(a) does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555.

In considering a motion to dismiss, a plaintiff's well-pled allegations are taken as true, and the complaint and all reasonable inferences are liberally construed in the plaintiff's favor. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993). Nevertheless, although the Court must accept the plaintiff's factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pled with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

3

**IV.     DISCUSSION AND ANALYSIS**

    *A.     Whether this action should be dismissed or stayed  on grounds of abstention and international comity*

Candioli contends the Court should dismiss or stay this action on grounds of abstention and international comity inasmuch as the Italian proceeding is duplicative of this case.  Nutramax counters that neither the abstention doctrine nor principles of international comity permit this action to be dismissed or stayed.

        *1.     Whether this action should be dismissed on the grounds of abstention and international comity*

As a general rule, federal courts are bound by a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 813.

"Under the principles of *Colorado River*, [however,] federal courts may abstain from exercising their jurisdiction in the exceptional circumstances where a federal case duplicates contemporaneous [foreign] proceedings and wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation clearly favors abstention[.]" *Vulcan Chemical Technologies, Inc. v. Barker*, 297 F.3d 332, 340-41 (4th Cir. 2002) (citations omitted) (internal quotation marks omitted) (internal alteration marks omitted).

 "When a litigant urges abstention on the ground that concurrent federal and [foreign] suits present exceptional circumstances, the district court must first determine whether the [foreign] and federal proceedings are parallel. Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Min. Corp. v. Int'l Union, United*

*Mine Workers of America*, 946 F.2d 1072, 1073 (4th Cir. 1991).  However, "the existence of proceedings in [a foreign] court does not by itself preclude parallel proceedings in federal court." *Id*.

"Second, exceptional circumstances warranting abstention must exist."  *Gannett Co., Inc. v. Clark Const. Group, Inc.*, 286 F.3d 737, 741 (4th Cir. 2002) (citation omitted) (internal quotation marks omitted).  Although there is no rigid test, here is a list of "several factors that are relevant in determining whether a particular case presents such exceptional circumstances: (1) jurisdiction over the property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal law is implicated; and (6) whether the [foreign] court proceedings are adequate to protect the parties' rights."  *Id*.

In addition, "whenever a parallel proceeding is pending in [a foreign] court, district courts must also take into account considerations of federalism, efficiency, and comity."  *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998).

Turning to the question of whether this action and the Italian one are parallel, there is no question that the parties in the two lawsuits are identical.  So, the Court must then decide whether, absent abstention, the same parties will be called upon to "litigate substantially the same issues in different forums."  *New Beckley Min. Corp.*, 946 F.2d at 1073.

The Fourth Circuit has recognized there are instances in which, "[a]lthough the two proceedings have certain facts and arguments in common, the legal issues are not substantially the same."  *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 233 (4th Cir. 2000).  Thus, cases are not parallel when there are "different issues with different requisites of proof[ ]" and "the actions seek different remedies[.]"  *Gannett Co., Inc.*, 286 F.3d at 742-43.

The Italian action concerns Nutramax's claim of Condioli's unfair competition in the Italian market. It applies Italian law. This case, however, concerns Nurtamax's breach of contract claim against Condioli arising out the parties' three agreements. And, it applies South Carolina law

Thus, here, if Nutramax hopes to prevail, it must establish "the existence of the contract, its breach, and the damages caused by such breach." *Branche Builders, Inc. v. Coggins*, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009). No such proof is required for Nutramax to prevail in the Italian action.

Also, Nutramax does not seek the same relief in the two actions. In this case, Nutramax seeks just monetary relief. In the Italian action, however, it seeks both monetary and injunctive relief. "A difference in remedies is a factor counseling denial of a motion to abstain." *New Beckley Min. Corp.*, 946 F.2d at 1074.

Nevertheless, in Candioli's effort to convince the Court the two actions are parallel, it lists a host of overlapping allegations between the Italian action and this one, which the Court need not reproduce here. Suffice it to say that "factual overlap does not dictate that proceedings are parallel: the *Colorado River* doctrine does not give federal courts *carte blanche* to decline to hear cases within their jurisdiction merely because issues or factual disputes in those cases may be addressed in past or pending proceedings before [foreign] tribunals." *Id*. Or, put another way, "[a]lthough the two proceedings have certain facts and arguments in common, the legal issues are not substantially the same." *Al-Abood*, 217 F.3d at 233.

In sum, "it would appear that a breach of contract claim pending in the federal case is not pending, nor has it ever been pending, in [the Italian foreign] court proceeding. It cannot be said therefore that parallel duplicative proceedings exist in [a foreign] court so as to present a *Colorado*

6

*River* issue." *McLaughlin v. United Virginia Bank*, 955 F.2d 930, 935 (4th Cir. 1992). Thus, the Court will deny Candioli's motion to dismiss based on abstention. As such, it is unnecessary to consider the parties' other abstention arguments. *See Al-Abood*, 217 F.3d at 233 ("Because the district court correctly determined that these suits are not parallel, it ha[s] no duty to examine the various abstention factors.").

Inasmuch as the two cases must be parallel before comity can be considered, there is no reason for the Court to discuss that argument either. *See Kapiloff*, 155 F.3d at 493 ("[W]henever a parallel proceeding is pending in [a foreign] court, district courts must also take into account considerations of federalism, efficiency, and comity.")

### 2. Whether this action should be stayed on the grounds of abstention and international comity

As to Candioli's request that the Court stay this action until the Italian one is complete, the Supreme Court has long held, "a stay is as much a refusal to exercise federal jurisdiction as a dismissal. When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel [foreign-court] litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (4th Cir. 1983). "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay." *Id*. Consequently, the Court will also deny Candioli's motion to stay this action.

### B. Whether this action should be dismissed for improper claim-splitting

Second, Candioli contends the Court should dismiss this matter because Nutramax has improperly split its claims between this action and the Italian action. Nutramax insists it has not.

"Despite what may appear to result in a duplication of judicial resources, the rule is well recognized that the pendency of an action in the [foreign] court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McLaughlin*, 955 F.2d at 934 (citation omitted) (internal quotation marks omitted) (internal alteration marks omitted). According to the rule against claim splitting, however, "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2nd Cir. 2000).

Of course, in this instance, the same court requirement is not satisfied. As such, the Court is unable to say this case should be dismissed for improper claim splitting.

### C.     *Whether the forum selection clauses are inapplicable and have been waived*

Third, Candioli maintains the forum selection clauses in the agreements are inapplicable and have been waived. Nutramax argues the opposite.

Candioli's contentions on this issue are based upon its abstention and claim splitting arguments, which the Court has rejected. Consequently, its forum selection arguments necessarily must meet the same fate.

### D.     *Whether Nutramax fails to state a claim for breach of the distributor agreements*

Fourth, Candioli maintains Nutramax's breach of the Distributor Agreements should be dismissed because Nutramax fails to state a claim based on the plain language of the Agreements. Nutramax insists this is inaccurate.

As the Court has already noted, to establish a breach of contract claim, Nutramax must show "the existence of the contract, its breach, and the damages caused by such breach." *Branche Builders, Inc.*, 686 S.E.2d at 202. The actual breach itself is the only element at issue in this lawsuit.

To recap, the Distributor Agreements required Candioli to "provide a listing of new products being launched or offered by [Candioli] containing . . . chondroitin sulfate." Distributor Agreements § 13. In Nutramax's complaint, it pled that, "[p]ursuant to the Distributor Agreements, Candioli had an obligation to inform Nutramax that Candioli intended to launch or offer for sale products containing chondroitin sulfate." Complaint ¶ 34.

Candioli insists that, "intended" was not in the Distributor Agreements. As such, according to Candioli, the requirement that it "provide a listing of new products being launched or offered by [Candioli] containing . . . chondroitin sulfate[,]" Distributor Agreements § 13, required Candioli to provide Nutramax with a list of products that were being made available to the public, or placed on sale. It argues that it was not required, however, to provide a list of products it intended to bring to market, as Nutramax claims in the complaint.

The parties focus on the dictionary meanings of the terms "launched" and "offered" for their arguments as to whether, as a matter of law, the Court can say that "being launched or offered" is the same as "intended to launch or offer." It is the meaning of the term "being," however, not "launched" and "offered," that the Court thinks to be dispositive.

Here are the first three definitions for the term "being" in the *Merriam-Webster Dictionary*: "[1] the quality or state of having existence. . . . [2] something that is conceivable and hence capable of existing. . . . [3] something that actually exists." https://www.merriam-webster.com/dictionary/being?src=search-dict-hed (last visited March 9, 2021).

The first and third definitions, "the quality or state of having existence" and "something that actually exists[,]" *id*., favor Candioli's reading of the Distribution Agreements. But, the second one,

"something that is conceivable and hence capable of existing," *id*., obviously favors Nutramax's interpretation.

Thus, the term "being" is ambiguous. It can refer to something that already is. But, it can just as easily refer to something that is yet to be, or intended to be.

As such, the Court is unable to conclude Nutramax has failed to state a claim. Consequently, the Court will deny Candioli's motion to dismiss on this basis.

### V.     CONCLUSION

Therefore, based on the foregoing discussion and analysis, it is the judgment of this Court Candioli's motion to dismiss or, in the alternative, to stay the action, is **DENIED**.

**IT IS SO ORDERED**.

Signed this 10th day of March, 2021, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
